**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MATT PLICHTA,

                Plaintiff,

      v.

COSTCO WHOLESALE CORPORATION,

              Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Matt Plichta ("Plaintiff" or "Plichta," by and through his attorneys, HKM Employment Attorneys, LLP, for his Complaint against Defendant Costco Wholesale Corporation ("Costco" or "Defendant") states and alleges as follows:

### PRELIMINARY STATEMENT

1.      This is an employment discrimination case arising from Defendant's failure to accommodate, discrimination toward, and constructive termination of Plaintiff because of his actual and/or perceived disability (i.e. major depressive disorder with anxious distress, attention deficit hyperactivity disorder combined, and related symptoms), in violation of the Americans with Disabilities Act, as amended ("ADA").

2.      Plaintiff began working for Defendant as a Cashier Assistant on or about March 9, 2020. From July 25, 2020 and until his constructive termination, Plaintiff regularly requested reasonable accommodations, to work four days per week, with one of his days off each week being on a Wednesday, to attend medical appointments. His requests for same were repeatedly denied.

1

3.     For a period of time, Defendant insisted that Plaintiff would be scheduled on Wednesdays, but should "call out" on those days for his medical appointments.  Plaintiff accepted this alternative accommodation, but was then disciplined for calling out of work as he had been instructed to do.

4.     At another point, Defendant attempted to demote Plaintiff to a Limited Part Time position, which would reduce Plaintiff's hours from 28 to 30 per week down to only 15 hours per week.

5.     In July of 2021, Defendant finally allowed Plaintiff the reasonable accommodations he had sought for approximately one year.  However, on or about September 10, 2021, Defendant revoked the accommodation and informed Plaintiff that he must *again* call out and use either his Family Medical Leave Act or Paid Time Off time when Plaintiff needed to miss work because of his disabilities.

6.     The fact that Defendant provided the reasonable accommodation, albeit briefly, demonstrates that Defendant could have provided this reasonable accommodation throughout the period in which Plaintiff requested same, without causing any undue hardship.

7.     In or about December 2021, having suffered from months of the Defendant failing to accommodate his disability, and because Defendant's ongoing and repeated failure to accommodate him had exacerbated his medical conditions, Plaintiff was forced to take medical leave to obtain the necessary treatment.

8.     Defendant's conduct – including refusing to grant Plaintiff reasonable accommodations when it was able to do so without causing Defendant any undue hardship, and rescinding the accommodations it had briefly granted – had a significant impact on Plaintiff's

mental health and impaired his ability to obtain the treatment he needed.  Likewise, Defendant's conduct showed that Plaintiff's supervisors were not interested in working with individuals who requested reasonable accommodations.

9.     While he was on medical leave, in February 2022, Plaintiff felt he had no choice but to resign.  Having suffered discriminatory treatment by Defendant from July 2020 to February 2022 – and after being forced to frequently forego much-needed therapy and medication that he could not afford due to Defendant reducing his hours (by insisting he call out of work for appointments) – Plaintiff was forced to resign in February 2022.

## **PARTIES**

10.     Plaintiff incorporates all the paragraphs of this Complaint as though set forth fully and separately herein.

11.     Plaintiff is, and at all times relevant to this Complaint was, a resident of Colorado.

12.     At all relevant times, Plaintiff was a member of a protected class of individuals recognized under the Americans with Disabilities Act and the Colorado Anti-Discrimination Act.

13.     Defendant Costco Wholesale Corporation ("Costco" or "Defendant") is a Washington corporation duly registered as a Foreign Corporation in Colorado, with a principal office at 999 Lake Dr., Issaquah, Washington 98027.

14.     Plaintiff works for Defendant at its 505 N. Nevada Avenue, Colorado Springs, Colorado 80918 location.

15.     At all relevant times, Costco was Plaintiff's "employer" within the meaning of the Americans with Disabilities Act and Colorado Anti-Discrimination Act.

16.     Defendant is an employer within the meaning of 42 U.S.C. § 12111(5)(A), in that the Defendant has 15 or more employees each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

17.     Defendant is an employer within the meaning of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401(3).

<u>**JURISDICTION AND VENUE**</u>

18.     Plaintiff incorporates all the paragraphs of this Complaint as though set forth fully and separately herein.

19.     This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

20.     This Court has original jurisdiction over Plaintiff's claims due to diversity of citizenship between the parties and because the jurisdictional amount exceeds $75,000, pursuant to 28 U.S.C. § 1332.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

<u>**ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED**</u>

22.     Plaintiff incorporates all the paragraphs of this Complaint as though set forth fully and separately herein.

23.     Plaintiff filed his Charge of Discrimination, Charge Numbers E2100010908 and 32A-2021-00383, with the Equal Employment Opportunity Commission and Colorado Civil Rights Division for disability and/or perceived disability discrimination, failure to accommodate, and retaliation on or about February 17, 2021.

24.     On or about February 17, 2022, the Colorado Civil Rights Division issued a Determination in favor of Plaintiff on Charge Number E2100010908, concluding "from our investigation that there is sufficient evidence to support the Complainant's claims of failure to accommodate a disability and retaliation.  As such, a Probable Cause determination is hereby issued for those claims."

25.     The Determination Plaintiff was issued constitutes a Notice of Right to Sue with respect to Charge Number E2100010908.

26.     Plaintiff has requested but not yet received a Notice of Right to Sue with respect to Charge Number 32A-2021-00383.

27.     On or about April 18, 2022, Plaintiff filed a Second Charge of Discrimination asserting additional allegations of discrimination, retaliation, and constructive termination based on his known and/or perceived disability.

28.     Plaintiff has requested but not yet received a Notice of Right to Sue with respect to the Charge filed on or about April 18, 2022.

29.     To put Defendant on notice of all claims Plaintiff intends to bring and to potentially save the parties and the Court resources, Plaintiff includes the claims from Charge Number 32A-2021-00383 and his Second Charge of Discrimination in this first Complaint.  Plaintiff intends to address with counsel during the 26(f) conference, and with the Court during the scheduling conference, whether an amended pleading will be necessary once the additional Notices of Right to Sue are received from the CCRD and/or EEOC.

30.     Plaintiff filed the present action within ninety (90) days of receipt of the first Notice of Right to Sue.

31.     Plaintiff has met all administrative prerequisites prior to filing this action.

**FACTUAL ALLEGATIONS**

32.     Plaintiff incorporates all the paragraphs of this Complaint as though set forth fully and separately herein.

33.     Plaintiff began working for the Defendant as a Cashier Assistant on or about March 9, 2020.

34.     At all times during his employment with Defendant, Plaintiff met or exceeded Defendant's legitimate performance expectations.

35.     Plaintiff is a disabled person within the meaning of the ADA, in that Plaintiff suffers from major depressive disorder with anxious distress; attention-deficit hyperactivity disorder combined; and related symptoms.  Without taking into account the effects of ameliorative measures, such as medication, Plaintiff's medical conditions substantially limit one or more major life activities.

36.     Plaintiff's medical condition also constitutes a perceived disability.  Defendant knew about his medical condition and knew that it was neither transitory nor minor.

37.     On or about July 25, 2020, Plaintiff asked Steven Milam and Troy Dantzler, (Managers) for the reasonable accommodation of working four rather than five days per week. Without any evaluation, Milam and Dantzler said no.  They explained that Defendant had previously allowed 4-day work weeks but discontinued the practice.

38.     On or about August 18, 2020, Plaintiff called Defendant's Human Resources Hotline to request the reasonable accommodation of working four days per week rather than five

days per week.  Defendant's Human Resources representative instructed Plaintiff to ask Brandon

Ruiz (General Manager).

39.     Plaintiff asked Ruiz for the reasonable accommodation, and Ruiz insisted the

request to be made in writing.  On or about August 22, 2020, per Ruiz's request, Plaintiff placed a

letter requesting accommodations on Ruiz's desk.  The following is a copy of the letter:

August 22, 2020

Matt Plichta
Employee #: 6249160

Brandon,

I am writing to request a change in my schedule from five workdays to four. I made a verbal
request and was told that Costco policy was to schedule all employees five days a week.

The intent for this letter is to ask that my hours be scheduled across 4 working days as an
accommodation for a disability. I believe this is reasonable as my employee type would not be
impacted and I was told this is something the company has allowed in the past.

Ideally, at least one of these three non-working days will be consistent to allow weekly standing
treatment appointments while additional appointments are scheduled as available. My current
standing appointments have been scheduled for Wednesdays. It is easiest to keep these
Wednesday appointments.

I am genuinely grateful for this job and how the company treats its employees. I told several
people that a manager said "the general consensus is that you are awesome" during my most
recent review..

Thank you, I appreciate the open door policy.

40.     On or about August 30, 2020, Plaintiff was called into Defendant's administrative

office to talk with Milam and Dantzler (Managers).  In that meeting, the Managers gave Plaintiff

a copy of the August 26, 2020 email chain discussed below and explained to Plaintiff that, per

Company policy, Plaintiff was expected to work five days per week.  However, they also asked

Plaintiff to provide a doctor's note regarding his requested accommodations and instructed

Plaintiff that, <u>while waiting for further response from Defendant, Plaintiff should call out weekly as needed for doctor's appointments</u>.  The email chain given to Plaintiff included the following:

(a) On or about August 26, 2020, Wesley Knutsen (Payroll Clerk) emailed Tyson Bergren (Personnel Specialist) to explain that Plaintiff had requested an accommodation of working four days per week due to a disability.  Knutsen asked: "I know I probably have asked before but is it a Costco policy to be scheduled 5 days or can we make our own determination on a case by case basis."

(b) Bergren responded: "There is not a Company policy that outright says PT employees must work 5 days per week, but the Execs have essentially implemented an *expectation* that PT employees are available 5 days per week. Since the employee is making this as a medical accommodation request, he would need to provide documentation from his doctor indicating a need, and management would work with Integrated Leave to determine if/how the request can be accommodated." (emphasis added).

41.     On or about September 14, 2020, Plaintiff sent a letter (dated September 11, 2020) to Bergren again requesting accommodations, and including a letter from his doctor, Brian Anderson, M.D.  Plaintiff provided the following to Defendant on September 14, 2020:

September 11, 2020

Tyson Bergren
Personnel Specialist
tbergren@costco.com

Tyson,

I previously requested that my hours be scheduled across 4 working days instead of 5. I have conditions that qualify me as a person with a disability under the Americans with Disabilities Act and require accommodations. This disability impacts major life activities by affecting functional memory, cognition, and perceptual awareness.

Reducing my work days to four per week will greatly assist in performing major life activities and job functions by decreasing sustained sensory load and providing needed recovery.

Additionally, I am requesting that one of my days off fall on Wednesday. This will accommodate a consistent and exhaustive treatment regimen.

I've attached a letter from my doctor confirming this need for accommodation. Because this contains information related to my health, I appreciate your discretion in disclosing these details only to HR personnel.

To summarize this accommodation:
  - Request to be scheduled 4 days per week
  - Request to have Wednesdays off to provide consistent treatment
  - These requests will not impact my status as a Part Time Employee

Please let me know if you have any questions regarding this accommodation.

Thank you,

Matt Plichta
Employee #: 6249160

# Colorado Medical Psychiatry, LLC

### Jill Vidas, MD / Brian Anderson, MD
5377 Manhattan Cir. Suite 201 / Boulder, Colorado  80303
Phone: 720-304-0083   Fax: 720-304-0114

September 11, 2020

Dear Mr. Tyson Bergren,

This letter is regarding my patient Mr. Matthew Plichta who I have been seeing on an outpatient basis since December 11, 2018 for treatment of a medical condition.

Due to the symptoms of Mr. Plicta's medical condition we are asking for the following accommodations at work:

- Reducing his scheduled workdays to four days instead of five.
- Requesting to have Wednesdays off in order to schedule consistent appointments with his providers.

We are hoping that these requests would also not negatively impact his status as a part time employee. Please do not hesitate to contact the office with any questions.

Sincerely,

Brian Anderson, M.D.

10

42.     On or about September 15, 2020, Bergren responded that all requests for accommodation must go through Ruiz (General Manager).  Plaintiff explained to Bergren that he had already provided a request for accommodation to Ruiz in August 2020, but to no avail.

43.     On or about September 21, 2020, Plaintiff gave a printed copy of the above request for accommodations to Joseph Washington (who was, at the time, the new General Manager).

44.     On or about September 25, 2020, Plaintiff received a phone call from Briotix Health – a company which assists Defendant with the accommodation process – asking for authorization to speak directly to Plaintiff's doctor.  Plaintiff declined and instead agreed to relay communications and seek further information from his health care providers as necessary.

45.     On or about September 26, 2020, Washington approached Plaintiff and said that he had sent Plaintiff's request for accommodations to Defendant's corporate office.  While waiting for a response from Defendant's corporate office, Washington offered to allow Plaintiff Wednesdays off for 90 days, so long as Plaintiff signed an acknowledgment that the new, temporary position would end in 90 days.  Plaintiff declined unless Defendant would agree to reassess Plaintiff's medical restrictions and need for accommodations at the end of the 90-day period.  Defendant refused.

46.     On or about October 1, 2020, Plaintiff received the following letter from Defendant's "WorkCare Team" asking for additional information from Plaintiff's doctors:

 

October 1, 2020

Matthew Plichta
1115 Terrace Road
Colorado Springs, CO 80904

PLEASE RESPOND BY OCTOBER 21, 2020

Re: Work Restrictions Clarification

Dear Matthew:

Costco reviewed and forwarded the documentation you provided from your health care provider Brian Anderson, MD, to its representative WorkCare, a company that assists with the accommodation process. The documentation, dated September 11, 2020, states that due to your medical condition you need to work "four days instead of five" each week, including having "Wednesdays off" for health care provider appointments.

In order to respond and explore possible accommodations to effectively address your work restrictions (which may include possible reassignment as appropriate), Costco needs you to provide additional documentation from your health care provider:

- Clarifying whether you can work any part of the day on Wednesdays, such as before or after your health care provider appointments. If so, the documentation should indicate the times of day during which you are able to work on Wednesdays.

- Clarifying whether or not alternative accommodations, such as changing your work schedule or allowing you to take additional or longer breaks during the course of the workday, would allow you to work five days per week. If so, the documentation should identify the alternative accommodations that would allow you to work five days per week, if any.

- Indicating whether or not your restrictions are permanent and, if not, indicating the duration of your restrictions, including how long your restrictions may continue into the future.

As you know, Accommodation Consultant Maya Wells from Briotix, who also assists Costco with the accommodation process, contacted you and explained that Costco needed to receive clarification of your restrictions. Maya offered her services to contact your health care provider to obtain the clarification at Costco's expense and you declined.

At no cost to you, you continue to have the option to use the services of Briotix as well as the services of WorkCare to obtain the clarifying information regarding your work restrictions from your health care provider. A physician of WorkCare or an Accommodation Consultant from Briotix will contact your health care provider directly to obtain the clarifying information. Costco and its employees have found this service to be simple and helpful. In order to use this service to obtain this information, you need only sign and return the enclosed authorization form by **October 21, 2020**, to WorkCare at the following address or fax number:

WorkCare,Inc
Attn: Costco-WorkCare Team
300 S. Harbor Blvd., Suite 600
Anaheim, CA 92805
**Fax: (888) 365-2787**

FAX YOUR RESPONSE TO WORKCARE AT 1-888-365-2787                                      FILENAME: 1030Plichta09282020SD170761

47.     On or about October 21, 2020, Plaintiff provided Defendant with a letter from Plaintiff's doctor, Dr. Anderson, responding to the questions posed on October 1, 2020:

### Colorado Medical Psychiatry, LLC

Jill Vidas, MD / Brian Anderson, MD
5377 Manhattan Cir. Suite 201 / Boulder, Colorado 80303
Phone: 720-304-0083   Fax: 720-304-0114

October 20, 2020

To Whom It May Concern,

This letter is regarding my patient Mr. Matthew Plichta who I have been seeing on an outpatient basis since December 11, 2018 for treatment of a medical condition. This letter is to update Costco with further information.

Due to the symptoms of Mr. Plicta's medical condition he would be unable to work any part of the day on Wednesdays due to his healthcare appointments scheduled on these days. Alternative accommodations such as additional or longer breaks are not appropriate for Mr. Plicta. A four-day work week with Wednesdays off will be the best accommodation for Mr. Plicta. While these restrictions are not permanent, we are unable to determine how long these restrictions will continue as they are based on the severity of symptoms that Mr. Plicta is experiencing.

We are hoping that these requests would also not negatively impact his status as a part time employee. Please do not hesitate to contact the office with any questions.

Sincerely,

Brian Anderson, M.D.

13

48.     On or about November 10, 2020, Washington offered Plaintiff a limited part-time position, i.e. a demotion, stating: "the only other alternative I can think of is a Limited Part Time position" in which Plaintiff would be working only 15 hours or less per week.  Plaintiff explained that a limited part-time position would reduce Plaintiff's hours and thus his pay.

49.      In this conversation, Washington admitted that allowing Plaintiff Wednesdays off of work would be *easy* for the Defendant to allow.  However, Washington said that if Defendant let Plaintiff have an accommodation, it would "open the floodgates" for other employees to request days off.  Washington said that the Defendant would not accommodate Plichta "long-term," and that he would need to talk to WorkCare prior to Defendant allowing an accommodation, if any.

50.     Plaintiff reminded Washington that he had been requesting reasonable accommodations since July 2020 and still had not received an accommodation.  Plaintiff explained that he could not accept the demotion to a limited part-time position, as it would significantly reduce his work hours.

51.     The following are excerpts from the conversation:

(a) Washington: "The issue becomes, once we set a precedent and we start doing things like this, *it's going to open the floodgates for employees to say 'I can't work a certain thing*.'"

(b) Washington:  "*So you were saying that you need to have Wednesdays, that's not a big deal at all*."

(c) Washington, in response to Plaintiff asking if it would be unreasonable for him to work 4 days per week: "*I'm not saying that it's unreasonable*.  But it's just not what we typically do at Costco.  As a retail company we require our employees to work five days a week."

(d) Washington: "[T]here's not an accommodation for a four day work week."

14

   (e) Washington, after suggesting additional breaks as an accommodation: "[T]he only other alternative I can think of is a Limited Part Time position."  A Limited Part Time position would limit Plaintiff to only 15 hours per week or less – a demotion, as it would reduce Plaintiff's hours from 28 to 30 hours per week he normally worked.

   (f) When Plaintiff asked why a 4-day workweek would not work, Washington responded: "Yeah because Costco is telling you that it's not an accommodatable option, is what this is saying.  That's all I can tell you. . . . _They tell me I can do it then I'll do it.  I don't have a problem with it_."

52.     On or about November 11, 2020, Plaintiff emailed Washington copies of the previously submitted requests for accommodation.

53.     On or about November 24, 2020, Plaintiff asked Washington if there was an update in follow-up to their November 10, 2020 conversation and Plaintiff's prior requests for accommodation.  Washington said that he had not yet talked with anyone in Human Resources and would not be able to until after the holidays.

54.     On or about December 6, 2020, Plaintiff called in sick due to a disability-related event.

55.     On or about December 15, 2020, Plaintiff tried to call Jill Whittaker (Regional Manager) to ask about the status of the reasonable accommodation Plaintiff had been requesting since July 2020.  Ms. Whittaker's associate, Heidi (last name unknown) said that she would try to get Plaintiff an answer soon.

56.     Later, or about December 15, 2020, Plaintiff spoke with Washington, Lydia Maldonado (Assistant General Manager), and Teresa Tollefson (HR Manager).  The following are excerpts from the conversation:

(a) They urged Plaintiff to accept a demotion to a temporary, limited part-time position in which Plaintiff would work approximately 15 hours per week, and which would be reevaluated on February 12, 2021.  Plaintiff declined the demotion.

(b) The Defendant claimed it needed clarification on other accommodations that would allow Plaintiff to work "hours more in line with the business needs of [his] position," noting that the physician did not say that the requested accommodation was "the only reasonable accommodation."

57.    On or about December 18, 2020, Plaintiff received another letter from Defendant (dated December 15, 2020) asking his doctor for additional information:



58.    On or about December 28, 2020, Plaintiff received an Employee Counseling Notice for "excessive absenteeism."  Some of the absences were related to calling out sick – as Plaintiff had been explicitly instructed to do in a prior meeting regarding his requests for accommodation – in order to attend medical appointments related to Plaintiff's disability.

59.    On or about February 1, 2021, Plaintiff provided *another* doctor's letter that reiterated: (1) there were no alternative accommodations that would allow him to work a five-day week; and (2) Plaintiff's medical appointments could not be scheduled on alternative days as lack of structured appointments would negatively impact his medical condition:

# Colorado Medical Psychiatry, LLC

Jill Vidas, MD / Brian Anderson, MD

5377 Manhattan Cir. Suite 201 / Boulder, Colorado  80303

Phone: 720-304-0083   Fax: 720-304-0114

February 1, 2021

To Whom It May Concern,

This letter is regarding my patient Mr. Matthew Plichta who I have been seeing on an outpatient basis since December 11, 2018 for treatment of a medical condition. This letter is to update Costco with further information.

Due to the symptoms of Mr. Plicta's medical condition there are no other alternative accommodations that would allow him to work a five-day week. The request is only for a four-day work week with Wednesdays off. Also, his medical appointments cannot be scheduled on alternative days. A lack of structured appointments would negatively impact Mr. Plicta's medical condition.  While these restrictions are not permanent, we are unable to determine how long these restrictions will continue as they are based on the severity of symptoms that Mr. Plicta is experiencing.

We are hoping that these requests would also not negatively impact his status as a part time employee. Please do not hesitate to contact the office with any questions.

Sincerely,

Brian Anderson, M.D.

60.     On or about February 22, 2021, Defendant's WorkCare division asked Plaintiff whether his condition would require him to be absent from work intermittently, and if so, how frequently and for how long.  Defendant claimed that this information had not yet been provided.

61.     On or about March 1, 2021, Plaintiff was issued a performance review in which Plaintiff was scolded for alleged issues related to attendance.  Again, many of the call outs were because of Plaintiff's disability and because Plaintiff had explicitly been instructed to call out.

62.     On or about March 5, 2021, Plaintiff spoke with Chris Dages (Manager), who said that Plaintiff had two options:

      a.  To accept a one-month accommodation, in which Plaintiff would have Wednesdays off of work to attend medical appointments.  Plaintiff expressed his concerns that this option would put him into a Transitional Temporary role, rather than a permanent part-time employee.  In addition, this option did not address the main accommodation recommended by Plaintiff's doctor, which is that Plaintiff work only four days per week, rather than five; or

      b.  To remain in Plaintiff's current position with no accommodations, despite having provided Defendants with multiple medical records insisting that Plaintiff need an accommodation.

      c.  Dages explained that Defendant would not accommodate Plaintiff's medical restrictions because Defendant did not want to open the door for other requests for accommodation.

63.     On or about March 17, 2021, in follow up to that conversation, Plaintiff wrote to Dages to again request accommodations and to report that he was being discriminated against based upon his disability.  The following is a copy of the March 17, 2021 letter:

19

March 17th, 2021

Dear Mr. Dages,

Per our conversation on March 5, 2021, it is my understanding that I have two options:

1. To accept a one-month accommodation, in which I would have Wednesdays off of work to attend medical appointments. I have expressed my concerns that this would put me into a Transitional Temporary role, rather than a permanent part-time employee. In addition, this does not address the main accommodation recommended by my doctor, which is that I work only four days per week, rather than five; or

2. To remain in my current position with no accommodations, despite having provided Costco with multiple medical records insisting that I need an accommodation.

Per my doctors' notes – which I have previously provided, but are again attached for reference (total of 3 letters of need from doctor) – I need to work no more than four days per week, rather than five due to my disability, and that one of these days is consistent to allow for treatment, which is currently on Wednesdays. Please let me know on or before April 6, 2021 when you are available to discuss, in good faith, options for providing reasonable accommodations. Or, if I should direct these requests for accommodation to someone in Human Resources, please let me know who the best person to contact is.

Of note, I am particularly concerned because I understand that several other employees are permitted to have consistent days off without the need to be in a Transitional Temporary role, and that other employees have been permitted to work four days per week at this and other Costco locations. I am concerned that I am being treated differently than other employees, *i.e.* discriminated against, because of my disability and/or requests for accommodation.

Thank you in advance for your prompt attention to this matter.

Sincerely,

Matt Plichta

64.     On March 31, 2021, Plaintiff became eligible for leave under the Family and Medical Leave Act ("FMLA").

65.     On or about April 9, 2021, as requested by Defendant, Plaintiff's doctor filled out a Work Restriction Form, which Plaintiff promptly provided to Defendant.

66.     On or about April 9, 2021, Defendant offered Plaintiff FMLA leave as a reasonable accommodation – specifically, Plaintiff could request intermittent FMLA leave for each Wednesday he was scheduled.  Defendant claimed it would continue to work with Plaintiff on an acceptable, permanent solution, but asserted it was still missing information from Plaintiff's physician.   In the meantime, Defendant offered to accommodate Plaintiff with a four-day workweek for 15 days while waiting for clarifying information from Plaintiff's doctor.

67.     On or about May 11, 2021, Plaintiff received another letter from Defendant admitting that it temporarily accommodated his requested schedule, and asking Plaintiff's doctor for additional information.

68.     Plaintiff's doctor completed *another* Work Restriction Form shortly thereafter, which Plaintiff promptly forwarded to Defendant.

69.     On or about May 21, 2021, Plaintiff received an email from Tollefson asking for further clarifying information from Plaintiff's doctor.

70.     On June 10, 2021, Plaintiff responded to Tollefson and attached *another* Work Restriction Form from Plaintiff's doctor with additional clarification.   This indicated that Plaintiff's: "[d]isability impacts major life activities by affecting functional memory, cognition, and perceptual awarenesss.  The severity of the disability requires an accommodation to reduce the number of workdays to four per week."

71.     Throughout Plaintiff's employment, upon information and belief, other similarly situated individuals – not of Plaintiff's protected class – are and were regularly allowed to work four days per week, without being demoted to a temporary position or being given reduced hours of 15 hours per week.

72.    <u>In or about the week of July 26, 2021 (one year after Plaintiff first requested the reasonable accommodations), Defendant informed Plaintiff that it would be scheduling Plaintiff to work four days a week and that Plaintiff would be given three days off per week, with one of the days off being Wednesdays</u>.  According to Washington, the instruction to provide Plaintiff with a four-day work week came from corporate headquarters.

73.    <u>Shortly after, however, the reasonable accommodation was revoked</u>.

74.    <u>On or about September 10, 2021, Washington (General Manager) informed Plaintiff that he was no longer allowed to work only four days per week</u>.  Instead, Plaintiff would need to call out and use either FMLA or paid time off for appointments.  When Plaintiff asked Washington what had changed – since Washington himself had admitted that the four day per week schedule was working well – Washington told Plaintiff that Defendant never intended to accommodate Plaintiff's disability in the long-term and that the four day a week schedule was merely temporary to allow Defendant time to investigate its options.

75.    After the meeting, Washington reiterated that the four day per week schedule was working out fine (i.e. caused no undue hardship) but said Defendant wanted to enforce a purported policy of employees working five days per week.  No other reason was provided for why Defendant allegedly could not accommodate Plaintiff.  Further, to Plaintiff's knowledge, no analysis of undue hardship was conducted at any time regarding Plaintiff's requested accommodations.

76.    In its Determination in favor of Plaintiff, the Colorado Civil Rights Division noted that Defendant's:

> [R]easoning is undermined by the fact that it offered, on several occasions, and provided, the Complainant [Plaintiff] with a four-day

workweek throughout months of the interactive process; as such, it is plausibly reasonable that the Respondent [Defendant] has not experienced undue hardship by accommodating Complainant's [Plaintiff's] request.  Furthermore, the Respondent [Defendant] admits to temporarily accommodating other employees without disabilities, such as those with childcare obligations, with a four-day workweek.

77.     The Defendant did not make a good faith effort to determine whether Plaintiff's requested accommodations would be possible, as the clarification discussions/interactive process took over seven months.

78.     Defendant cannot show that the Plaintiff's accommodation request, or timely responding to same, would have imposed an undue hardship on Defendant.

79.     Plaintiff suffered discriminatory treatment from Defendant from August 2020 to February 2022, as he was repeatedly denied the accommodations he needed, forced to endure an unnecessarily delayed accommodation process, required to call out for medical appointments, and was urged to take a demotion to a position working only 15 hours per week.  By waiting nearly a year to provide him with these accommodations and then suddenly rescinding them, Defendant further discriminated against Plaintiff because of his disabilities and/or perceived disabilities.

80.     In or about December 2021, having suffered from months of the Defendant failing to accommodate Plaintiff, and because Defendant's ongoing and repeated failure to accommodate Plaintiff had exacerbated his health conditions, Plaintiff was forced to take leave pursuant to the Family and Medical Leave Act in order to obtain necessary treatment.

81.     Management's conduct of continually refusing to grant Plaintiff reasonable accommodations despite being able to do so without causing any undue hardship, and rescinding those accommodations it briefly granted, had a significant impact on Plaintiff's mental health and

impaired his ability to obtain the treatment he needed.  Likewise, Defendant's conduct showed that Plaintiff's supervisors were not interested in working with individuals who requested reasonable accommodations under the ADA.

82.     In late February 2022, having endured months of the discriminatory treatment – and after being forced to frequently forego much needed therapy and medication that he could not afford due to reduced hours – Plaintiff was forced to resign.

## FIRST CLAIM FOR RELIEF

**(Disability and/or Perceived Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A))**

83.     Plaintiff incorporates all the paragraphs of this Complaint as though set forth fully and separately herein.

84.     Plaintiff is a disabled person within the meaning of the ADA.

85.     Plaintiff suffers from major depressive disorder with anxious distress; attention-deficit hyperactivity disorder combined, i.e. "ADHD;" and related symptoms.

86.     Plaintiff's disability and/or the symptoms directly related to his disability substantially limits one or more major life activities.

87.     Plaintiff was qualified for his job and was capable of performing the essential functions of his position with or without a reasonable accommodation.

88.     Plaintiff was regarded as being disabled by Defendant.

89.     As addressed herein, Defendant repeatedly denied the reasonable accommodations suggested by Plaintiff and/or his medical providers, including limiting his schedule to four workdays per week and allowing him off of work consistently on Wednesdays.

24

90.    The requested reasonable accommodations would not have caused Defendant an undue hardship.

91.    Defendant likewise failed to engage in the requisite good faith interactive process with Plaintiff regarding reasonable accommodations under the ADA.

92.    Beginning in July 2020, Defendant discriminated against Plaintiff because of his disabilities by subjecting him to less favorable terms, conditions, and privileges of employment than employees outside of Plaintiff's protected class.

93.    Instead of engaging in the good faith interactive process, Defendant insisted that allowing Plaintiff an accommodation would "open the floodgates" for schedule changes; instructed Plaintiff to "call out," thereby reducing his work hours and his pay; disciplined Plaintiff for "excessive absenteeism" after he called out of work as instructed; regularly instructed Plaintiff to speak to someone else about his requested accommodations; tried to demote Plaintiff to a position working only 15 hours per week; and repeatedly insisted that Plaintiff provide additional information.

94.    In February of 2022, having endured months of discriminatory treatment – and after frequently having to forego much-needed treatment for his health conditions – Plaintiff was forced to resign.

95.    The effect of Defendant's discriminatory practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of Plaintiff's disabilities and/or perceived disabilities, and/or because of Defendant's denial of Plaintiff's requests for reasonable accommodations based on his disabilities.

96.    Defendant's above-described conduct was intentional.

97.     Defendant's above-described conduct was done with malice or reckless indifference to Plaintiff's federally protected rights.

98.     As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**SECOND CLAIM FOR RELIEF**

**(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a))**

99.     Plaintiff incorporates all the paragraphs of this Complaint as though set forth fully and separately herein.

100.    Since July 2020, Plaintiff made numerous requests for reasonable accommodations related to his disabilities.  In doing so, Plaintiff was engaging in activity protected under the ADA.

101.    On or about March 17, 2021, Plaintiff reported that he was being discriminated against.  In doing so, Plaintiff was engaging in activity protected under the ADA.

102.    Defendant retaliated against Plaintiff after he engaged in the above-described protected activity.

103.    More specifically, Defendant instructed Plaintiff to "call out," thereby reducing his work hours and his pay; disciplined Plaintiff for "excessive absenteeism" after he called out of work as instructed; unnecessarily delayed the accommodation process; regularly instructed Plaintiff to speak to someone else about his requested accommodations; tried to demote Plaintiff to a position working only 15 hours per week; and repeatedly insisted that Plaintiff provide additional information.  Defendant briefly granted and then revoked Plaintiff's accommodations

and, ultimately, Plaintiff felt he had no choice but to resign.  These consequences are of the type that would tend to discourage similarly situated employees from requesting accommodations and/or complaining about or opposing illegal discrimination.

104.    A causal connection exists between Plaintiff's protected activities and Defendant's materially adverse actions, i.e. the retaliatory acts occurred because Plaintiff requested and/or required reasonable accommodations related to his disabling medical condition(s) and/or because Plaintiff reported discriminatory conduct.

105.    Defendant's above-described conduct was intentional.

106.    Defendant's above-described conduct was done with malice or with reckless indifference to Plaintiff's federally protected rights.

107.    As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant and order the following relief as allowed by law:

A.    Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B.    Punitive damages as allowed by law;

C.    Attorneys' fees and costs of this action;

D.      Pre-judgment and post-judgment interest at the highest lawful rate; and

E.      Such further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 18th day of May 2022.



                              HKM EMPLOYMENT ATTORNEYS LLP


                              By: <u>*s/ Jesse K. Fishman*</u>
                                    Jesse K. Fishman
                                    Claire E. Hunter
                                    HKM Employment Attorneys LLP
                                    730 17th Street, Suite 750
                                    Denver, Colorado 80202
                                    Telephone: (720) 668-8989
                                    jfishman@hkm.com
                                    chunter@hkm.com
                                    *Attorneys for Plaintiff Matt Plichta*